**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEAN MOSER, an individual,
THOMAS OVERLY, an individual,
DAVID RANEY, an individual,
REAGAN JANSON, an individual,
MICHIGAN COALITION FOR                    No. 1:26-cv-1850
RESPONSIBLE GUN OWNERS,
MICHIGAN GUN OWNERS,
MICHIGAN OPEN CARRY, and
NATIONAL RIFLE ASSOCIATION OF AMERICA,

     *Plaintiffs*,

v.

DANA NESSEL, in her official capacity as
Attorney General of the State of Michigan,
COLONEL JAMES GRADY II, in his official capacity as
Director of the Michigan State Police,
CITY OF BATTLE CREEK,
SHANNON BAGLEY, in her official capacity as
Chief of Police of the City of Battle Creek,
CITY OF TROY,
JOSH JONES, in his official capacity as the
Chief of Police of the City of Troy,
CITY OF KENTWOOD,
BRYAN LITWIN, in his official capacity as
Chief of Police of the City of Kentwood,
SHERIFF RICHARD FULLER III, in his official capacity as
Sheriff of Kalamazoo County,
CITY OF WALKER, and
KEITH MANKEL, in his official capacity as
Chief of Police of the City of Walker,

     *Defendants*.

_____

**42 U.S.C. § 1983 COMPLAINT**
**<u>REGARDING DEPRIVATION OF RIGHTS</u>**

1

Plaintiffs, by and through undersigned counsel, seek relief under 42 U.S.C. §§ 1983 and 1988 against Defendants for violations of rights, privileges, or immunities secured by the United States Constitution. In support of this Complaint, Plaintiffs allege as follows:

**INTRODUCTION**

1.      This action challenges portions of Michigan's firearm licensing and registration regime, M.C.L. §§ 28.421-28.435, as inconsistent with the Second Amendment because the challenged laws lack the historical pedigree required by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022), and because Michigan's licensing regime is abusive. *See id.* at 39 n.9. Michigan's License to Purchase, Carry, Possess, or Transport a Pistol ("LTP"), M.C.L. § 28.422 et seq., also violates the Due Process Clause of the Fourteenth Amendment because it fails to provide adequate procedural safeguards to protect applicants against arbitrary or erroneous deprivation of fundamental rights. The relevant statutory provisions challenged in this action are attached collectively as Exhibit A.

2.      This action challenges the constitutionality of the licensing regime because:

   a.   It requires individuals to apply for and obtain a single-use license before purchasing, carrying, possessing, or transporting a pistol.[1] M.C.L. § 28.422(1). (Unless otherwise noted, all further statutory references are to the Michigan Compiled Laws.)

   b.   Section 28.422(3) authorizes denial of an LTP upon a determination of "probable cause to believe that the applicant would be a threat to the applicant or to other individuals, or would commit an offense with the firearm that would violate a law

---

[1] Michigan law defines "pistol" as a loaded or unloaded firearm that is 26 inches or less in length, or a loaded or unloaded firearm that by its construction and appearance conceals it as a firearm. § 28.421(i).

of this or another state or of the United States." This standard lacks narrow, objective, and definite criteria and instead vests local licensing officials with broad and unchallengeable discretion to deny applications—a practice declared unconstitutional in *Bruen.*

c.    The LTP regime uses an evidentiary standard of "probable cause" to deny someone a license to exercise a fundamental right, thus violating procedural due process.

d.    The LTP regime provides no appeal process and no notice of disqualifying conditions, thus violating procedural due process.

e.    Michigan's pistol acquisition and sales-record regime requires sellers to submit transaction records for entry into a State-maintained database, including transactions involving purchasers who use an LTP and transactions involving purchasers who are exempt from the LTP requirement because they possess a Michigan Concealed Pistol License ("CPL").

f.    The LTP regime results in arbitrary and inconsistent issuance and denial of licenses by licensing officials.

g.    The LTP regime requires forfeiture of firearms based on violations of law committed by third parties over whom the purchaser has no control or authority.

h.    The LTP regime duplicates the process already in place for firearms sales under federal law, utilizing the Federal Bureau of Investigation's National Instant Criminal Background Check System ("NICS"). Federally licensed firearm dealers (FFLs) are federal agents for purposes of firearm sales. FFLs are already authorized to administer the same background check performed by the issuing agency under §

28.422. Thus, the LTP regime constitutes an abusive practice and is unconstitutional under *Bruen*, 597 U.S. at 39 n.9.[2]

3.     The Plaintiffs in this lawsuit include firearm-rights organizations—Michigan Coalition for Responsible Gun Owners ("MCRGO"), Michigan Gun Owners ("MGO"), Michigan Open Carry ("MOC"), and National Rifle Association of America ("NRA")—whose members are directly affected by this regime, and Individual Plaintiffs—Dean Moser, Thomas Overly, David Raney, and Reagan Janson—whose attempts at navigating the arbitrary process lay bare its constitutional repugnance.

4.     This Complaint raises facial and as-applied claims under the Second and Fourteenth Amendments and seeks declaratory, injunctive, and other appropriate relief.

**PARTIES**

5.     Plaintiff Dean Moser is a resident of Oakland County, Michigan, and at all times relevant to this Complaint was of legal age to apply for and receive a license to purchase a firearm under § 28.422. Moser is without any firearm-related disability or disqualification under state or federal law. Moser is a member of several firearm-rights organizations, including MCRGO, MGO, MOC, and NRA. *See* Exhibit B: Affidavit of Dean Moser.

6.     Thomas Overly is a resident of Kent County, Michigan, and at all times relevant to this Complaint was of legal age to apply for and receive a license to purchase a firearm under § 28.422. Overly is without any firearm-related disability or disqualification under state or federal

---

[2] Ironically, Michigan's LTP operates as an alternative permit under 18 U.S.C. § 922(t)(3), allowing presentation of an LTP at the point of sale to serve in lieu of a NICS background check. Accordingly, under § 28.422, local issuing agencies must pay to conduct background checks at their expense, when the same background checks can be conducted for free (to the local taxpayer) at the point of sale by an FFL. This bureaucratic overkill is part of what makes this statutory scheme irrational, arbitrary, and capricious.

law. Overly is a member of several firearm-rights organizations, including MCRGO, MGO, MOC, and NRA. *See* Exhibit C: Affidavit of Thomas Overly.

7.      Plaintiff David Raney is a resident of Washtenaw County, Michigan, and at all times relevant to this Complaint was of legal age to apply for and receive a license to purchase a firearm under § 28.422. Raney is without any firearm-related disability or disqualification under state or federal law. Raney is a member of several firearm-rights organizations, including MCRGO, MGO, MOC, and NRA. *See* Exhibit D: Affidavit of David Raney.

8.      Plaintiff Reagan Janson is a resident of Ottawa County, Michigan, and at all times relevant to this Complaint was of legal age to apply for and receive a license to purchase a firearm under § 28.422. Janson is without any firearm-related disability or disqualification under state or federal law. Janson is a member of several firearm-rights organizations, including MCRGO, MGO, MOC, and NRA. *See* Exhibit E: Affidavit of Reagan Janson.

9.      Plaintiffs Moser, Overly, Raney, and Janson (collectively the "Individual Plaintiffs") are being irreparably harmed by Defendants' laws, customs, forms, policies, and practices.

10.     Plaintiff Michigan Coalition for Responsible Gun Owners ("MCRGO") is a Michigan nonprofit, currently in good standing, non-partisan corporation formed for the purpose of supporting and defending the right to keep and bear arms via education, legislation, and litigation, with thousands of members statewide. MCRGO has trained well over 300,000 Concealed Pistol License holders, who reside in each of Michigan's counties. Like the Individual Plaintiffs, MCRGO members are subject to the challenged regime, and they intend to acquire firearms but have been deterred, delayed, chilled, or denied the ability to do so. MCRGO represents the interests of its members who have an actual case or controversy and interest in this matter and

5

in preventing the recurrence of the same issues as raised in this Complaint. *See* Exhibit F: Affidavit of Brady Schickinger.

11.     Plaintiff Michigan Gun Owners ("MGO") is a Michigan nonprofit organization, currently in good standing, formed under the Michigan Nonprofit Corporation Act of 1982. MGO's goals include educating the public on safe, responsible gun ownership and preserving and defending the right to keep and bear arms as guaranteed by the Bill of Rights and Article I, Section 6 of Michigan's Constitution. MGO members residing in this state and subject to the challenged regime intend to acquire firearms but have been deterred, delayed, chilled, or denied the ability to do so. MGO represents the interests of its members who have an actual case or controversy and an interest in this matter and in preventing the recurrence of the same issues raised in this Complaint. *See* Exhibit G: Affidavit of Jerry Atkins.

12.     Plaintiff Michigan Open Carry ("MOC") is a Michigan nonprofit advocacy organization, currently in good standing, formed under the Nonprofit Corporation Act of 1982 that supports the lawful carry of handguns for self-defense. MOC provides written materials for its members, municipalities, and law enforcement outlining the laws governing lawful handgun-carrying. MOC members are subject to the challenged regime; they intend to acquire firearms but have been deterred, delayed, chilled, or denied the ability to do so. MOC represents the interests of its members who have an actual case or controversy and an interest in the matter, and in preventing the recurrence of the same issues raised in this Complaint. *See* Exhibit H: Affidavit of Jason Gillman.

13.     Plaintiff National Rifle Association of America ("NRA") is a nonprofit corporation organized under the laws of the State of New York with its principal place of business in Fairfax, Virginia. The NRA was founded in 1871 and is devoted to protecting the right to keep and bear

arms. It is America's oldest civil rights organization and America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. The NRA has millions of members across the nation, including thousands of members in Michigan. The NRA brings this action on behalf of its members—including the Individual Plaintiffs—who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. *See* Exhibit I: Affidavit of John Commerford.

14. Together, Plaintiffs MCRGO, MGO, MOC, and NRA (collectively the "Organizational Plaintiffs") represent the interests of many thousands of their members who are being irreparably harmed by Defendants' laws, customs, forms, policies, and practices.

15. Defendant Dana Nessel is sued in her official capacity as the Attorney General of the State of Michigan. She is the state's head attorney and law enforcement official.

16. Defendant Nessel holds statewide jurisdiction to investigate and prosecute all indictable offenses. Defendant Nessel is also responsible for executing, delegating, and supervising the laws and regulations governing firearms, including the laws challenged herein.

17. Defendant Colonel James Grady II is sued in his official capacity as the Director of the Michigan State Police. As the Director, Grady exercises, delegates, or supervises all the powers and duties of the Michigan State Police, including executing and enforcing Michigan's laws and regulations governing firearms, including the laws challenged herein. §§ 28.2, 28.7, 28.6(2). These provisions are under M.C.L. Chapter 28, which is entitled "Michigan State Police." Defendant Grady may be served at 7150 Harris Drive, Dimondale, Michigan 48821.

18. Defendant Grady maintains the relevant firearms transaction database; promulgates and administers forms; receives and stores reporting information; and maintains denial information used by local agencies.

19.    Defendant City of Battle Creek ("Defendant Battle Creek") is a municipal corporation formed under the laws of the State of Michigan.

20.    Defendant Shannon Bagley is the Chief of Police for the City of Battle Creek, Michigan. He is sued in his official capacity.

21.    Pursuant to M.C.L. § 28.422(3), Defendant Bagley is the official within the Battle Creek Police Department charged with issuing or denying LTPs to applicants with due speed and diligence. In that role, Defendant Bagley oversees and directs the processing, review, and disposition of LTP applications.

22.    Defendant Bagley is the final policymaker for the Battle Creek Police Department with respect to policies, customs, and practices governing the processing and disposition of LTP applications, including policies or practices concerning the consideration of prior determinations made by other jurisdictions. Actions taken pursuant to those policies, customs, or practices constitute actions of the City of Battle Creek for purposes of 42 U.S.C. § 1983.

23.    Upon information and belief, the Battle Creek Police Department maintains policies or practices governing the review of LTP applications that are standardless and lack meaningful procedural safeguards. In practice, the Department fails to conduct a genuine, independent evaluation of an applicant's eligibility under Michigan law and instead relies on opaque criteria, including, in some cases, prior determinations by other jurisdictions, without providing applicants clear notice of the grounds for denial, an opportunity to be heard, or any meaningful avenue for review or appeal. These practices result in arbitrary denials and the erroneous deprivation of a fundamental constitutional right.

24.    Defendant City of Troy ("Defendant Troy") is a municipal corporation formed under the laws of the State of Michigan.

25.     Defendant Josh Jones is the Chief of Police for the City of Troy, Michigan. He is sued in his official capacity.

26.     Pursuant to M.C.L. § 28.422(3), Defendant Jones is the official within the Troy Police Department charged with issuing or denying LTPs to applicants with due speed and diligence. In that role, Defendant Jones oversees and directs the processing, review, and disposition of LTP applications.

27.     Defendant Jones is the final policymaker for the Troy Police Department with respect to policies, customs, and practices governing the processing and disposition of LTP applications, including policies or practices concerning the consideration of prior determinations made by other jurisdictions. Actions taken pursuant to those policies, customs, or practices constitute actions of the City of Troy for purposes of 42 U.S.C. § 1983.

28.     Upon information and belief, the Troy Police Department maintains policies or practices governing the review of LTP applications that are standardless and lack meaningful procedural safeguards. In practice, the Department fails to conduct a genuine, independent evaluation of an applicant's eligibility under Michigan law and instead relies on opaque criteria, including, in some cases, prior determinations by other jurisdictions, without providing applicants clear notice of the grounds for denial, an opportunity to be heard, or any meaningful avenue for review or appeal. These practices result in arbitrary denials and the erroneous deprivation of a fundamental constitutional right.

29.     Defendant City of Kentwood ("Defendant Kentwood") is a municipal corporation formed under the laws of the State of Michigan.

30.     Defendant Bryan Litwin is the Chief of Police for the City of Kentwood, Michigan. He is sued in his official capacity.

9

31.    Pursuant to M.C.L. § 28.422(3), Defendant Litwin is the official within the Kentwood Police Department charged with issuing or denying LTPs to applicants with due speed and diligence. In that role, Defendant Litwin oversees and directs the processing, review, and disposition of LTP applications.

32.    Defendant Litwin is the final policymaker for the Kentwood Police Department with respect to policies, customs, and practices governing the processing and disposition of LTP applications, including policies or practices concerning the consideration of prior determinations made by other jurisdictions. Actions taken pursuant to those policies, customs, or practices constitute actions of the City of Kentwood for purposes of 42 U.S.C. § 1983.

33.    Upon information and belief, the Kentwood Police Department maintains policies or practices governing the review of LTP applications that are standardless and lack meaningful procedural safeguards. In practice, the Department fails to conduct a genuine, independent evaluation of an applicant's eligibility under Michigan law and instead relies on opaque criteria, including, in some cases, prior determinations by other jurisdictions, without providing applicants clear notice of the grounds for denial, an opportunity to be heard, or any meaningful avenue for review or appeal. These practices result in arbitrary denials and the erroneous deprivation of a fundamental constitutional right.

34.    Defendant Sheriff Richard Fuller III is the elected Sheriff of Kalamazoo County, Michigan, and is sued in his official capacity.

35.    Pursuant to M.C.L. § 28.422(3), Defendant Fuller, acting through the Kalamazoo County Sheriff's Office and its personnel, is responsible for issuing or denying applications for LTPs presented to that office by persons seeking to acquire firearms in accordance with Michigan law.

36.    In that role, Defendant Fuller exercises, directs, delegates, and supervises policies, customs, and practices governing the receipt, processing, refusal, review, and disposition of LTP applications presented to the Kalamazoo County Sheriff's Office.

37.    Defendant Fuller is the final policymaker for the Kalamazoo County Sheriff's Office with respect to policies, customs, and practices governing the intake, processing, refusal, and disposition of LTP applications. Actions taken pursuant to those policies, customs, or practices constitute actions of Kalamazoo County for purposes of 42 U.S.C. § 1983.

38.    Upon information and belief, Defendant Fuller maintains policies or practices governing the review of LTP applications that are standardless and lack meaningful procedural safeguards. In practice, the Department fails to conduct a genuine, independent evaluation of an applicant's eligibility under Michigan law and instead relies on opaque criteria, including, in some cases, prior determinations by other jurisdictions, without providing applicants clear notice of the grounds for denial, an opportunity to be heard, or any meaningful avenue for review or appeal. These practices result in arbitrary denials and the erroneous deprivation of a fundamental constitutional right.

39.    Defendant City of Walker ("Defendant Walker") is a municipal corporation formed under the laws of the State of Michigan.

40.    Defendant Keith Mankel is the Chief of Police for the City of Walker, Michigan. He is sued in his official capacity.

41.    Pursuant to M.C.L. § 28.422(3), Defendant Mankel is the official within the Walker Police Department charged with issuing or denying LTPs to applicants with due speed and diligence. In that role, Defendant Mankel oversees and directs the processing, review, and disposition of LTP applications.

11

42. Defendant Mankel is the final policymaker for the Walker Police Department with respect to policies, customs, and practices governing the processing and disposition of LTP applications, including policies or practices concerning the consideration of prior determinations made by other jurisdictions. Actions taken pursuant to those policies, customs, or practices constitute actions of the City of Walker for purposes of 42 U.S.C. § 1983.

43. Upon information and belief, the Walker Police Department maintains policies or practices governing the review of LTP applications that are standardless and lack meaningful procedural safeguards. In practice, the Department fails to conduct a genuine, independent evaluation of an applicant's eligibility under Michigan law and instead relies on opaque criteria, including, in some cases, prior determinations by other jurisdictions, without providing applicants clear notice of the grounds for denial, an opportunity to be heard, or any meaningful avenue for review or appeal. These practices result in arbitrary denials and the erroneous deprivation of a fundamental constitutional right.

## JURISDICTION AND VENUE

44. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

45. Declaratory and further relief are authorized by 28 U.S.C. §§ 2201 and 2202.

46. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this District, including the administration and denial of LTP applications by local authorities within this District, and the harmful effects of the challenged State regime on Plaintiffs and their members located here.

12

**FACTUAL ALLEGATIONS**

47.     The Second Amendment guarantees "the right of the people to keep and bear Arms." The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring). The Second Amendment protects the right to acquire and possess arms in common use, such as handguns. *See District of Columbia v. Heller*, 554 U.S. 570, 627, 629 (2008). The state laws—including Michigan's LTP requirement—and local government actions challenged herein infringe those rights and thus violate the Second and Fourteenth Amendments.

**Background Facts on Background Checks**

48.     Federal law already sets a national standard for background checks for all firearm purchases from FFLs.[3]

> a.     After satisfying rigorous federal standards, states can opt to become Full Point of Contact (FPOC) jurisdictions and conduct all background checks required by state and federal law (e.g., California, Colorado, Connecticut, Virginia, etc.); or
>
> b.     A state may elect to become a Partial Point of Contact (PPOC) jurisdiction, where part of the background check is conducted by state authorities and another part is conducted through NICS (e.g., Wisconsin and New Hampshire use state agencies for handgun checks and NICS for long gun checks);

---

[3]  The Supreme Court has held that there are not two Second Amendments, one constraining federal law and a different Second Amendment constraining state law. *McDonald*, 561 U.S. at 765, 778–79 (2010) (The right to keep and bear arms for self-defense is incorporated against the States and is enforced "according to the same standards that protect those personal rights against federal encroachment.").

c.    And finally, the majority of states—including Michigan—do not attempt to participate in such programs but instead rely solely on the NICS system for all firearm transactions conducted at the point of sale by FFLs.

Federal law also creates an exception to the NICS background check requirement if a state issues an alternative permit that complies with 18 U.S.C. § 922(t)(3)(A). Michigan has two such alternative permits. One is Michigan's CPL, which authorizes the concealed carry of a firearm pursuant to M.C.L. §§ 28.425–28.425x and is not at issue in this litigation. The other is Michigan's LTP. It is this second, wholly redundant, regime that is at issue in this litigation.[4]

49.    Plaintiffs' acquisition, possession, and receipt of pistols and other covered firearms for lawful purposes, including self-defense, is protected conduct, guaranteed against infringement by the Second Amendment. The challenged statutory scheme thus implicates the right to keep and bear arms, shifting the burden to the Defendants to justify their LTP regime. This they cannot do.

50.    First, the Defendants cannot demonstrate a well-established and enduring tradition of relevant Founding-era firearm regulation that mirrors the burdens and other pitfalls of § 28.422.

51.    Second, the LTP regime is duplicative of the federal background check system already required at the point of sale through FFLs. Because Michigan is estopped from denying that its LTP regime is functionally equivalent to the NICS background check system, Defendants cannot justify requiring a law-abiding person to obtain a 30-day license to purchase, with its attendant bureaucratic burdens and additional unconstitutional conditions, when the same background check could be performed by an FFL at the point of sale. This duplication also needlessly burdens local law enforcement agencies—whose resources are already strained—by

---

[4] *See Brady Permit Chart*, ATF.GOV, https://www.atf.gov/rules-and-regulations/laws-alcohol-tobacco-firearms-and-explosives/gun-control-act/brady-law/brady-permit-chart (last accessed June 7, 2026). A true and correct copy is attached as Exhibit J.

requiring them to conduct background checks that are already performed through the federal NICS process.

52.    Third, Michigan's LTP is fraught with a whole slate of unconstitutional practices that violate procedural due process (e.g., non-objective standards of dangerousness, woefully inadequate evidentiary standards, lack of meaningful notice and appeal, etc.) that are not present in the already existing NICS background check system.

53.    The simplest equitable remedy to resolve the violations impacting the right to acquire arms in this litigation is for this Court to make the following findings:

a.  Michigan's probable cause evidentiary standard coupled with a standardless investigation for dangerousness set forth in § 28.422(3) violates the Second Amendment and the Fourteenth Amendment's procedural Due Process Clause; and

b.  Michigan's objective standards set forth in § 28.422(3)(a)-(h) are redundant with the NICS background check procedure already mandated by § 28.426(1); and

c.  This redundancy is abusive under *Bruen*, 597 U.S. at 39 n.9.

**Plaintiff-Specific Facts**

54.    Plaintiff Dean Moser is a law-abiding Michigan resident who does not possess a CPL and thus sought to acquire a firearm pursuant to Michigan's LTP scheme. *See* Affidavit of Dean Moser, Ex. B.

55.    On or about February 10, 2025, Moser appeared at the Troy Police Department to apply for an LTP, paid the required fee, and completed the form provided to him. After submitting his application, Moser was told to return home while the application was "reviewed" and that he would hear from the Department in approximately one week. *See id.*

56.     On or about February 20, 2025, Moser received written notice from Troy Police Chief Josh Jones denying his LTP application. The denial was based solely on purported prior "contacts" that were materially misrepresented and on an unsubstantiated suspicion of involvement in an incident for which Moser has never been contacted by any law-enforcement agency. The written determination did not identify the source of the information relied upon and expressly stated that the decision was not appealable because no appeal mechanism exists. *Id*.

57.     On or about June 18, 2025, Moser appeared at the Battle Creek Police Department intending to submit a new LTP application. A clerk informed him that the application would be automatically denied because of the prior denial issued by the Troy Police Department. Moser nevertheless paid the required fee and requested that Battle Creek conduct its own review. Shortly thereafter, Battle Creek denied Moser's application solely on the basis of the Troy Police Department's prior determination, again without providing any appeal mechanism. *Id*.

58.     Moser is under no legal disability that would prohibit him from acquiring or possessing firearms. He has successfully passed the federal background checks required for prospective firearm purchasers. Michigan law provides that the licensing authority shall issue a license to a qualified applicant with due speed and diligence unless the official has probable cause to believe the applicant would be a threat to himself or others, or would commit an offense with the firearm, § 28.422, and separately prohibits issuance unless the agency confirms through the National Instant Criminal Background Check System that the applicant is not federally prohibited from possessing or transporting a firearm, § 28.426; *see* also *Roberts v. DOJ*, 507 F.Supp.3d 864 (E.D. Mich. 2020).

59.     As applied to Moser, Michigan's LTP regime violates his constitutional rights by preventing him from acquiring a firearm based on undisclosed and unsubstantiated information,

permitting one local agency to rely mechanically on another agency's prior denial, and foreclosing any administrative appeal or other meaningful mechanism for review.

60.    Plaintiff Moser alleges on information and belief that, but for Michigan's mandatory LTP regime, he would have passed the NICS background check at any FFL and been able to exercise his Second Amendment right to keep and bear arms by purchasing a pistol.

61.    Plaintiff Overly is a law-abiding Michigan resident who does not possess a CPL and thus sought to acquire a firearm pursuant to Michigan's LTP scheme. *See* Affidavit of Thomas Overly, Ex. C.

62.    In April 2025, Overly applied for an LTP through the Kentwood Police Department, and on April 16, 2025, the Department denied that application. *Id*.

63.    In his denial from the Kentwood Police Department, Overly was instructed to either appeal the denial with the same Kentwood Police Department or with the Federal Bureau of Investigation Criminal Justice Information Services Division (FBI/CJIS), and was issued a NICS Transaction Number. *Id*.

64.    The purported "appeal" identified by the Kentwood Police Department was not a meaningful review mechanism. The Department identified no statute, regulation, or formal procedure governing such an appeal, but instead referred Overly to an unidentified and undefined discretionary process operating, upon information and belief, under Department policy and practice. The Department did not disclose what evidence would be considered, what standard would apply, who would decide the matter, whether any record would be made, or whether any written decision would issue. Nor did that illusory appeal provide a mechanism to review the Department's local predictive judgment, disclose the information relied upon, or permit Overly to contest the basis for denial before a neutral decision-maker.

17

65.    Seeking to verify his eligibility, Overly, through counsel, submitted an inquiry to the FBI/CJIS on or about July 14, 2025. On September 22, 2025, Overly received the FBI/CJIS response confirming that he had no prohibiting records in federal systems. He thereafter submitted a Voluntary Appeal File (VAF) application using the NICS Transaction Number provided in his denial letter from the Kentwood Police Department. *Id*.

66.    On November 22, 2025, the FBI issued Overly a Unique Personal Identification Number (UPIN). *Id*.

67.    On or around January 28, 2026, Overly again attempted to obtain an LTP from the Kentwood Police Department and presented his FBI-issued UPIN as evidence of his eligibility, but he was turned away and not permitted even to submit a new application. *Id*.

68.    The Kentwood Police Department explicitly rejected the UPIN and would not provide Overly with a subsequent written denial. Despite federal confirmation that he has no prohibiting records and the issuance of a UPIN, Overly remains unable to obtain an LTP because of the Kentwood Police Department's unconstitutional arbitrary determination. *Id*.

69.    As applied to Overly, Michigan's LTP regime has operated to deny access to a purchase license notwithstanding subsequent federal confirmation that Overly has no prohibiting record. Michigan's regime has further operated to prevent Overly from even submitting a new application and to deny him any formal adverse decision susceptible to review or appeal.

70.    Plaintiff Overly alleges on information and belief that, but for Michigan's mandatory LTP regime, he would have passed the NICS background check at any FFL and been able to exercise his Second Amendment right to keep and bear arms by purchasing a pistol.

18

71.     Plaintiff David Raney is a law-abiding Michigan resident who does not possess a CPL and thus sought to acquire a firearm pursuant to Michigan's LTP scheme. *See* Affidavit of David Raney, Ex. D.

72.     On or about January 20, 2026, Raney appeared at the Kalamazoo County Sheriff's Office with the intention of applying for an LTP. He presented his Michigan driver's license to personnel of the Kalamazoo County Sheriff's Office as identification. *Id.*

73.     However, personnel of the Kalamazoo County Sheriff's Office refused to permit Raney to submit an application because, according to the office, he was not a resident of Kalamazoo County. Sheriff's Office personnel turned Raney away before he was allowed to fill out any application materials, sign any form under oath, or otherwise invoke the statutory application process. Raney was thus denied even the opportunity to apply for an LTP. *Id.*

74.     As applied to Plaintiff Raney, Michigan's LTP regime is unconstitutional because, through the policies and practices of the Kalamazoo County Sheriff's Office, it was used to prevent him from even submitting an application for an LTP, thereby barring access to the licensing process itself and foreclosing any opportunity to create a record, obtain a written determination, or seek review, notwithstanding his status as a Michigan resident seeking to acquire a firearm for lawful purposes.

75.     Plaintiff Raney alleges on information and belief that, but for Michigan's mandatory LTP regime, he would have passed the NICS background check at any FFL and been able to exercise his Second Amendment right to keep and bear arms by purchasing a pistol.

76.     Plaintiff Reagan Janson is a law-abiding Michigan resident who does not possess a CPL and thus sought to acquire a firearm pursuant to Michigan's LTP scheme. *See* Affidavit of Reagan Janson, Ex. E.

19

77.    On or about December 22, 2025, Janson appeared at the Walker Police Department to apply for an LTP. Janson paid a required fee and completed a form provided to her. After submitting her application, Janson was instructed to return home and informed that she would be contacted with a determination. Later that day, Janson received a call from the Walker Police Department denying her application and informing her that no written denial would be issued. *Id*.

78.    On or about December 24, 2025, Janson followed up with the Walker Police Department via email to request a written determination. *Id*.

79.    On or about December 26, 2025, the Walker Police Department responded indicating that Janson's application was being denied for "probable cause" based on the Department's belief that Janson had recently applied to other jurisdictions. *Id*.

80.    Since that time, Janson has lawfully acquired a pistol, which, upon information and belief, has been registered with the State by the seller. *Id*.

81.    Janson had no control over the seller's submission of the registration paperwork, nor has she received any verifiable confirmation from the seller or the State that the registration paperwork was properly submitted or received. *Id*.

82.    As applied to Plaintiff Janson, Michigan's LTP regime is unconstitutional because the Walker Police Department's reliance on Janson's alleged applications in other jurisdictions was not a constitutionally valid basis for denial, and Defendants compounded that violation by initially refusing to provide a written denial and by affording Janson no meaningful opportunity to contest the Department's determination.

### Organizational Plaintiffs' Standing and Injury

83.    Organizational Plaintiffs are nonprofit corporations dedicated to protecting and advancing the right to keep and bear arms. Their members include law-abiding individuals who

seek to acquire, possess, train with, and use firearms for lawful purposes, including self-defense. *See* generally Organizational Affidavits, Exs. F–I.

## Associational Standing

84.     The Organizational Plaintiffs bring this action on behalf of their members, who include law-abiding individuals in Michigan who seek to acquire, possess, and use firearms for lawful purposes, including self-defense, and who are subject to the challenged acquisition, reporting, and enforcement regime.

85.     The challenged laws infringe the Second Amendment rights of the members of the Organizational Plaintiffs. As a result of the challenged statutory scheme, these members are denied, deterred, delayed, and chilled from exercising those rights.

86.     The Organizational Plaintiffs bring this action on behalf of their members because they satisfy the requirements for associational standing. Specifically:

a.     Their members would otherwise have standing to sue in their own right because the challenged laws infringe their ability to exercise rights protected by the Second Amendment;

b.     The interests that the Organizational Plaintiffs seek to protect are germane to their organizational purposes; and

c.     Neither the claims asserted nor the relief requested requires the participation of individual members.

87.     Accordingly, the constitutional and legal questions presented are common to the affected members and are suitable for resolution in a representative action brought by the Organizational Plaintiffs. See *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977); *Warth v. Seldin*, 422 U.S. 490 (1975).

88.     The Organizational Plaintiffs, therefore, have associational standing to challenge the constitutionality of the challenged laws.

### CLARIFICATION OF MICHIGAN'S LTP, CPL, AND SALES-RECORD REQUIREMENTS

89.     Michigan law uses the term "license" across several distinct firearm-related contexts. The LTP under § 28.422 is separate from Michigan's CPL regime under §§ 28.425–28.425x, which Plaintiffs do not challenge here. The challenged LTP regime operates principally as a pre-acquisition permission requirement for non-CPL purchasers, together with related transaction-recording, database-entry, and enforcement consequences following transfer.

90.     The statutory structure is fragmented and confusing. Michigan separately regulates acquisition licensing, concealed carry, vehicle carry, open possession, sales records, database entry, and forfeiture consequences. It places the reporting obligation on third-party sellers while leaving purchasers exposed to enforcement consequences if that reporting chain fails. Plaintiffs challenge that licensing, recording, database, and enforcement structure, not the CPL regime as such.

### MICHIGAN'S LTP IS A *DE FACTO* DISCRETIONARY LICENSING SCHEME

91.     Michigan regulates the acquisition and possession of firearms through a statutory licensing and recording regime principally governed by § 28.422 and related provisions.

92.     Subject to statutory exceptions, Michigan law prohibits a person from purchasing, carrying, possessing, or transporting a pistol unless the person has first obtained the license required by § 28.422(1).

93.     Under this statutory framework, an individual generally may lawfully acquire a pistol in Michigan only if the individual either possesses a valid CPL, which exempts the

22

individual from the LTP requirement, or first obtains an LTP from a local law-enforcement agency pursuant to § 28.422.

94.    This action challenges Michigan's LTP scheme, which requires individuals who do not possess a CPL to apply for and obtain advance approval from a local licensing authority before acquiring each pistol. In certain circumstances, the LTP requirement also applies to acquisitions of non-pistol firearms under Michigan law.

95.    Michigan law separately regulates pistols and non-pistol firearms, and the statutory requirements governing acquisition, possession, and transfer differ between those categories.

96.    Michigan's LTP scheme is functionally equivalent to the discretionary licensing scheme struck down in *Bruen*. Under § 28.422, local agencies, including Defendants, are authorized to issue LTPs. They have a duty to issue said licenses with "due speed and diligence," subject to three conditions.[5]

    a.  An issuing authority may deny an application upon probable cause to believe that the applicant would be a threat to the applicant or to other individuals, or would commit an offense with the firearm in violation of a state or federal law. § 28.422(3).

    b.  Section 28.422(3)(a)-(h) then incorporates the same criteria as the federal firearm disqualification standards enforced through NICS. Because Michigan reports any disqualifying conditions—including those based on state law—for firearm purchase, possession, and ownership to the NICS database, this LTP process is wholly redundant of the background check conducted through NICS.[6]

---

[5] Only one of which (a.) is challenged in this litigation as being wholly subjective, abusive, and facially violative of the Due Process Clause of the Fourteenth Amendment.

[6] The latest information available for Active Entries in the NICS Indices is as of December 31, 2025. *Active Entries in the NICS Indices as of December 31, 2025*, FBI.GOV, https://www.fbi.gov/file-repository/cjis/active-entries-in-the-nics-indices.pdf/view (last accessed

   c.   Section 28.426(1) then—cumulatively—mandates that the issuing agency for an LTP

      also access the NICS database, § 28.426(1)(a), and also verify that the applicant is not

      an illegal alien or nonimmigrant alien, § 28.426(1)(b).

97.     Under Michigan's statutory scheme, a non-CPL purchaser must obtain an LTP before purchasing a pistol even when the purchase is made through an FFL. Section 28.422 expressly contemplates pistol purchases from FFLs by requiring an applicant to be at least 21 years old when "the firearm is a pistol and the seller is licensed under 18 U.S.C. § 923." Yet Michigan separately exempts certain non-pistol firearm purchases from the LTP requirement when the purchaser undergoes a federal NICS background check through an FFL.

98.     As a result, Michigan preserves the LTP requirement for non-CPL pistol purchasers even when they buy from an FFL and are already subject to the federal dealer/NICS process.

99.     The LTP process is therefore redundant at multiple stages: the purchaser may already be subject to a federal dealer/NICS background check at the point of sale, and the local issuing agency must separately determine statutory eligibility, including by accessing NICS, before issuing the LTP.

100.    Even after those overlapping background check requirements are satisfied, issuance remains contingent on a licensing official's predictive assessment of the applicant's potential future dangerousness or possible future misuse of a firearm.

101.    Michigan's LTP statute is "shall issue" in form but "may issue" in operation. Issuance of an LTP under § 28.422 remains contingent on a licensing official's discretionary

---

June 7, 2026). Michigan currently reports in all categories: Felony, Under Indictment, Fugitive from Justice, Addicted to Controlled Substance, Illegal Alien, Dishonorable Discharge, Renounced Citizenship, Restrained Party in a Domestic Violence Order of Protection, Convicted of Misdemeanor Crime of Domestic Violence, and *State Prohibitions or Court-Ordered Firearm Restrictions*. A true and correct copy of the NICS Indices is attached as Exhibit K.

"probable cause" determination about an applicant's predicted future dangerousness or possible future misuse of a firearm.

102.    That discretionary override transforms the LTP requirement from an objective eligibility check into a prior-permission regime that conditions acquisition of protected arms on official judgment, imposing the type of licensing burden rejected in *Bruen*.

### THE LTP's EVIDENTIARY STANDARD IS UNCONSTITUTIONAL

103.    Michigan's LTP scheme permits the issuing authority to withhold a license based merely on "probable cause" to "believe that the applicant would be a threat to the applicant or to other individuals, or would commit an offense with the firearm that would violate a law of this or another state or of the United States." § 28.422(3).

104.    In evaluating the adequacy of procedures that can deprive a person of a liberty interest, courts consider the nature of the interest at stake, the risk of erroneous deprivation under the procedures used, and the value of additional procedural safeguards. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Johnson v. Morales*, 946 F.3d 911 (6th Cir. 2020).

105.    Furthermore, where the government seeks to deprive an individual of a liberty interest, due process requires a heightened evidentiary standard to reduce the risk of erroneous deprivation. In proceedings involving fundamental rights and liberty interests, the Supreme Court has required governments to meet higher evidentiary burdens than mere suspicion or a lesser evidentiary threshold. *See, e.g.*, *Addington v. Texas*, 441 U.S. 418 (1979); *Santosky v. Kramer*, 455 U.S. 745 (1982).

106.     By failing to require evidentiary proof beyond a reasonable doubt[7] (along with all other procedural safeguards), Michigan's LTP scheme violates the Fourteenth Amendment's Due Process Clause.

## MICHIGAN'S LTP LACKS AN APPEAL PROCESS

107.     The statutory scheme provides no statutory appeal process for an applicant whose license application is denied, refused, or simply not processed. *See* § 28.422.

108.     Although a licensing authority may choose to invent an appeal process, the statute imposes no requirement to do so and articulates no standards to govern such a process. The fact that a small number of authorities have cobbled together *ad hoc* or illusory procedures merely confirms that the statute itself provides no process, no guidance, and no protection against arbitrary deprivation of rights.

## THE LTP'S LIMITED DURATION IS IRRATIONAL

109.     Plaintiffs do not contend that an LTP is a CPL. Rather, the constitutional defect arises, in part, from Michigan's use of overlapping "license" terminology across distinct acquisition, carry, possession, transport, sales-record, database, and enforcement provisions. Although § 28.422 states that a licensee need not physically possess the LTP after the initial post-acquisition period, the statutory scheme still blurs the LTP's acquisition function with separate carry, possession, reporting, and enforcement consequences.

110.     Even when issued, an LTP becomes void unless used within 30 days of issuance. § 28.422(4). This expiration provision appears to address the license's use as a permission slip to purchase a pistol. However, the statute is poorly drafted, and both the scope of the license and the

---

[7] This is the evidentiary standard required to convict someone of a crime, which would not only deprive them of the right to keep and bear arms, but also of the right to vote or hold public office.

26

gun owner's duty to retain records are woefully vague for a statute that imposes criminal liability for violations.

111.    For example, § 28.422 fails to address the ambiguity of whether the 30-day license also applies to the conduct of carrying, possession, or transportation. The definition statute, § 28.421(2), mandates retention of a copy of the license issued under § 28.422 in order to "own, possess, carry, or transport" as a pistol any firearm greater than 26 inches in length; but only if the firearm was previously registered as a pistol in accordance with the time limits imposed by subsections (a) and (b), in which case the person must retain a copy of the § 28.422 license pursuant to subsection (c); unless the person notifies the relevant authorities under § 28.421(3) that they are electing to have the firearm declared a non-pistol.

112.    This reading indicates that § 28.422, when read in conjunction with § 28.421(2), requires retention of, and the ability to produce, a copy of the license issued under § 28.422 beyond the 30-day expiration period set forth in § 28.422(4). It is unclear, however, whether this requirement is limited to firearms that straddle the 26-inch dimensional threshold or instead applies to all pistols, and whether any related exemptions apply only to firearms meeting those dimensional criteria. This ambiguity is one of several vague, internally incoherent, and irrational features of Michigan's LTP scheme.[8]

113.    These vague, ambiguous, and wholly arbitrary licensing rules—which carry criminal penalties—violate the Fourteenth Amendment's Due Process Clause because they fail to put a person on notice of their duty under Michigan's licensing law.

---

[8] Adding insult to injury, § 776.20 adds the following doublespeak trap for the unwary: "In any prosecution for the violation of any acts of the state relative to use, licensing and possession of pistols or firearms, the burden of establishing any exception, excuse, proviso or exemption contained in any such act shall be upon the defendant but this does not shift the burden of proof for the violation."

27

## PISTOL SALES RECORDS AND REPORTING REQUIREMENTS

114.    Michigan law further requires the completion of a firearm sales record whenever a pistol is transferred. § 28.422a.

115.    When an individual acquires a pistol using an LTP issued under § 28.422, the seller must complete the license record and submit required documentation to the relevant licensing authority for entry into a statewide database maintained by the Michigan State Police. § 28.422(5); § 28.422a(2).[9]

116.    In transactions involving purchasers who possess a CPL, the seller likewise must complete the prescribed sales record and submit a copy for entry into the State's database. *See* Exhibit L.

117.    The sales record requires the disclosure of identifying information concerning both the purchaser and the firearm, including the purchaser's name and address, and the pistol's make, model, caliber, and serial number.

118.    As a result, Michigan's sales-record system does not merely document that a transaction occurred. It creates an owner-firearm identification system linking a particular purchaser to a particular pistol. That record is submitted to government authorities and retained in a statewide database administered by the Michigan State Police that is accessed by law enforcement.

119.    Because there is no pedigree for such a registration requirement under relevantly similar Founding-era arms regulations, this *de facto* registration scheme violates the Second Amendment as recently interpreted by the Supreme Court in *Bruen*.

---

[9]*See* RI-010A License to Purchase Form, as made publicly available on the City of Charlevoix firearms webpage. Source: City of Charlevoix, Michigan, Firearms, https://www.charlevoixmi.gov/493/Firearms (last accessed June 11, 2026).

28

**STATEWIDE DATABASE OF PISTOLS AND THEIR POSSESSORS**

120. Michigan law requires law-enforcement authorities to collect and maintain the information contained in pistol sales records in a statewide database administered by the Michigan State Police.

121. Upon information and belief, law-enforcement agencies throughout the State have access to this database.

122. Through this system, the State collects and retains identifying information linking particular pistols to specific individuals. In practice, this system functions as a *de facto* registry of privately owned pistols and their possessors, implemented through Michigan's pistol licensing and sales-record requirements.

123. Because there is no pedigree of such a registration requirement under relevantly similar Founding Era arms regulations, this *de facto* registration scheme violates the Second Amendment as recently interpreted by the Supreme Court in *Bruen*.

**CRIMINAL PENALTIES AND FORFEITURE**

124. Michigan law imposes criminal penalties for violations of these requirements.

125. A person who knowingly purchases, carries, possesses, or transports a pistol without first obtaining an LTP is guilty of a misdemeanor. § 750.223(1).

126. A person who knowingly violates the pistol sales-record requirements is likewise guilty of a misdemeanor. § 750.232a(1).

127. Firearms possessed contrary to the statutory scheme are also subject to seizure and forfeiture under § 28.434(1); § 750.239.

128. Because Michigan's forfeiture statutes apply to firearms possessed contrary to law, failures by third parties (parties other than the purchaser) to comply with the State's reporting

29

requirements expose the purchaser to criminal liability and forfeiture consequences tied to the transfer.

## INTEGRATED OPERATION OF THE STATUTORY SCHEME

129.    Michigan's firearm regulatory scheme is dispersed across several statutory provisions. M.C.L. § 28.421 provides relevant definitions; § 28.422 imposes the pre-acquisition licensing requirement and governs the application process and issuance standard; § 28.422(5) and § 28.422a(2) impose post-transfer reporting and database entry requirements; and § 28.434(1) together with §§ 750.223(1), 750.232a(1), and 750.239 establish criminal penalties and forfeiture consequences.

130.    These provisions create the challenged Michigan regime of discretionary prior permission, mandatory transaction reporting, and both *de jure* and *de facto* registration of pistol ownership.

131.    Under this system, individuals must obtain government permission before acquiring a protected arm, complete state-mandated documentation at the time of transfer, and rely on the *seller's* submission of transaction records that allow the State to record the firearm in its database.

132.    Michigan's firearm-recording regime provides no clear statutory procedure for the purchaser to confirm compliance, cure noncompliance, or prevent enforcement consequences before they attach.

133.    Failures at any stage of this process expose individuals to criminal penalties and forfeiture of the firearm itself.

134.    Because there is no pedigree of such a registration requirement under relevantly similar Founding Era arms regulations, this *de facto* registration scheme violates the Second Amendment as recently interpreted by the Supreme Court in *Bruen*.

**FIRST CLAIM**
**SECOND AMENDMENT – LICENSE-TO-PURCHASE REQUIREMENT**
**42 U.S.C. § 1983**
**U.S. CONST. AMENDS. II AND XIV**
**(M.C.L. § 28.422 IS FACIALLY UNCONSTITUTIONAL)**

135.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

136.    Individual Plaintiffs and the members of the Organizational Plaintiffs are among "the people" protected by the Second Amendment to the United States Constitution.

137.    Michigan's LTP regime imposes unconstitutional restrictions on Plaintiffs' constitutional right to acquire and possess firearms in violation of the Second and Fourteenth Amendments.

138.    The conduct regulated by M.C.L. § 28.422 is covered by the Second Amendment's plain text, and Defendants cannot demonstrate that the challenged licensing requirements are consistent with the Nation's historical tradition of firearm regulation.

139.    M.C.L. § 28.422 is facially unconstitutional because it subjects all law-abiding persons who do not possess a CPL to a licensing scheme that imposes discretionary, standardless, and abusive conditions on the exercise of the right to keep and bear arms.

140.    The Organizational Plaintiffs bring a facial challenge to M.C.L. § 28.422 on behalf of their members who are subject to the challenged licensing regime and whose rights to keep and bear arms are violated thereby.

141.    Plaintiffs are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. §§ 2201–2202. This Court should declare M.C.L. § 28.422 unconstitutional and enjoin its enforcement.

## SECOND CLAIM
### SECOND AMENDMENT – LICENSE-TO-PURCHASE REQUIREMENT
### 42 U.S.C. § 1983
### U.S. CONST. AMENDS. II AND XIV
### (M.C.L. § 28.422 IS UNCONSTITUTIONAL AS APPLIED)

142.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

143.    Individual Plaintiffs and the members of the Organizational Plaintiffs are among "the people" protected by the Second Amendment to the United States Constitution.

144.    Michigan's LTP regime imposes unconstitutional restrictions on Plaintiffs' constitutional right to acquire and possess firearms in violation of the Second and Fourteenth Amendments.

145.    The conduct regulated by M.C.L. § 28.422 is covered by the Second Amendment's plain text, and Defendants cannot demonstrate that the challenged licensing requirements are consistent with the Nation's historical tradition of firearm regulation.

146.    M.C.L. § 28.422 is unconstitutional as applied to Plaintiff Moser because it was used to deny him his right to acquire a firearm based on purported prior "contacts," unsubstantiated suspicion, and subsequent unquestioned reliance by another local agency on the prior denial rather than on any independent and objective determination of present eligibility.

147.    M.C.L. § 28.422 is unconstitutional as applied to Plaintiff Overly because it was used to deny or withhold an LTP, even after federal authorities confirmed that he had no prohibiting record and issued him a UPIN.

32

148.    M.C.L. § 28.422 is unconstitutional as applied to Plaintiff Raney because it was used to prevent him from even submitting an application for an LTP, thereby barring access to the licensing process itself and foreclosing any opportunity to create a record, obtain a written determination, or seek review, notwithstanding his status as a Michigan resident seeking to acquire a firearm for lawful purposes.

149.    M.C.L. § 28.422 is unconstitutional as applied to Plaintiff Janson because it was used to deny and impede her right to acquire a firearm for lawful purposes based on an undefined and discretionary "probable cause" determination tied to the Department's belief that she had applied in other jurisdictions. Although Janson later lawfully acquired a pistol, the statute as applied to her imposed a concrete infringement and delay on the exercise of her right to acquire a protected arm.

150.    The Organizational Plaintiffs bring this as-applied challenge to M.C.L. § 28.422 on behalf of their members who are subject to the challenged licensing regime because the challenged statute imposes discretionary, standardless, and abusive conditions on the exercise of the right to keep and bear arms.

151.    Plaintiffs are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. §§ 2201–2202. This Court should declare M.C.L. § 28.422 unconstitutional as applied to Plaintiffs and enjoin its enforcement against them.

**THIRD CLAIM**
**SECOND AMENDMENT - REGISTRATION & REPORTING**
**42 U.S.C. § 1983**
**U.S. CONST. AMENDS. II AND XIV**
**(M.C.L. § 28.422(5) IS FACIALLY UNCONSTITUTIONAL)**

152.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

153.    The pistols regulated by Michigan's registration and transaction-reporting scheme are "Arms" within the meaning of the Second Amendment.

154.    Michigan law requires that, following the transfer of a pistol, the seller submit transaction documentation to a governmental authority for entry into a database maintained by the Michigan State Police. *See* M.C.L. § 28.422(5).

155.    Through this mandatory reporting requirement, the State collects and maintains identifying information linking particular pistols to specific individuals.

156.    The required forms compel the disclosure of personal identifying information and firearm-specific information, including the purchaser's identifying information and the pistol's identifying characteristics (pistol's make, model, serial number, caliber, barrel length, and overall length), for submission to and retention in government records.

157.    Michigan's transaction-reporting and database requirements therefore impose mandatory disclosure obligations on individuals who acquire protected arms.

158.    The conduct regulated by M.C.L. § 28.422(5), namely the acquisition and possession of protected arms, falls within the plain text of the Second Amendment.

159.    Under *Bruen*, when the Second Amendment's plain text covers an individual's conduct, the government bears the burden of demonstrating that its regulation is consistent with this Nation's historical tradition of firearm regulation. There is no historical tradition of requiring ordinary, law-abiding citizens to disclose and have recorded in a government database identifying information about firearms they acquire and keep for lawful purposes. Nor is there a historical tradition of maintaining government registries linking particular firearms to particular individuals as a condition or consequence of acquisition, possession, or ownership.

160.    On its face, Michigan's pistol registration and mandatory transaction-reporting regime infringes the exercise of the right to keep and bear arms by requiring disclosure and government recording of firearm ownership information.

161.    Accordingly, M.C.L. § 28.422(5) violates the Second and Fourteenth Amendments because Defendants cannot demonstrate that the challenged registration and reporting requirements are consistent with the Nation's historical tradition of firearm regulation.

162.    The Organizational Plaintiffs bring a facial challenge to M.C.L. § 28.422(5) on behalf of their members who are subject to the challenged registration and reporting requirements regime.

163.    All Plaintiffs are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. §§ 2201–2202. This Court should declare M.C.L. § 28.422(5) unconstitutional and enjoin its enforcement.

**FOURTH CLAIM**
**SECOND AMENDMENT - REGISTRATION & REPORTING**
**42 U.S.C. § 1983**
**U.S. CONST. AMENDS. II AND XIV**
**(M.C.L. § 28.422(5) IS UNCONSTITUTIONAL AS APPLIED)**

164.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

165.    The pistols regulated by Michigan's registration and transaction-reporting scheme are "Arms" within the meaning of the Second Amendment.

166.    Michigan law requires that, following the transfer of a pistol, the seller submit transaction documentation to a governmental authority for entry into a database maintained by the Michigan State Police. *See* M.C.L. § 28.422(5).

167.    Through this mandatory reporting requirement, the State collects and maintains identifying information linking particular pistols to specific individuals.

35

168.    The required forms compel the disclosure of personal identifying information and firearm-specific information, including the purchaser's identifying information and the pistol's identifying characteristics (pistol's make, model, serial number, caliber, barrel length, and overall length), for submission to and retention in government records.

169.    Michigan's transaction-reporting and database requirements therefore impose mandatory disclosure obligations on individuals who acquire protected arms.

170.    The conduct regulated by M.C.L. § 28.422(5), namely the acquisition and possession of protected arms, falls within the plain text of the Second Amendment.

171.    Under *Bruen*, when the Second Amendment's plain text covers an individual's conduct, the government bears the burden of demonstrating that its regulation is consistent with this Nation's historical tradition of firearm regulation. There is no historical tradition of requiring ordinary, law-abiding citizens to disclose and have recorded in a government database identifying information about firearms they acquire and keep for lawful purposes. Nor is there a historical tradition of maintaining government registries linking particular firearms to particular individuals as a condition or consequence of acquisition, possession, or ownership.

172.    As applied to Plaintiff Janson, Michigan's reporting database regime infringes her right to acquire a pistol by requiring that identifying information concerning her and the pistol be submitted by the seller for entry into the State's pistol-record system. Thus, Janson's exercise of the right to acquire and possess a protected arm was directly infringed by a statutory scheme that compels disclosure and government recording of firearm ownership information as a condition of lawful acquisition.

173.    Janson herself had no control over whether the seller completed the required submission properly, no ability to prevent the State's collection and retention of the resulting

36

ownership data, and no verifiable confirmation from the seller or the State that the reporting process was correctly completed or entered. Her experience thus illustrates how Michigan's statutory regime makes the lawful acquisition and possession of a pistol contingent upon compelled disclosure and inclusion in a government-maintained database.

174.    Janson's experience thus demonstrates that the operation of M.C.L. § 28.422(5)—as applied to her experience—is unconstitutional because this statute imposes arbitrary and abusive conditions on the exercise of the right to acquire a firearm.

175.    Accordingly, M.C.L. § 28.422(5) violates the Second and Fourteenth Amendments because Defendants cannot demonstrate that the challenged registration and reporting requirements are consistent with the Nation's historical tradition of firearm regulation.

176.    The Organizational Plaintiffs bring an as-applied challenge to M.C.L. § 28.422(5) on behalf of their members who are subject to the challenged registration and reporting requirements.

177.    All Plaintiffs are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. §§ 2201–2202. This Court should declare M.C.L. § 28.422(5) unconstitutional as applied to Plaintiffs and enjoin its enforcement against them.

**FIFTH CLAIM**
**PROCEDURAL DUE PROCESS VIOLATIONS INFRINGING**
**SECOND AMENDMENT RIGHTS**
**U.S. CONST. AMEND. XIV**
**(M.C.L. § 28.422 VIOLATES PROCEDURAL DUE PROCESS RIGHTS —**
**LIBERTY INTEREST: RIGHT TO ACQUIRE IN ORDER**
**TO KEEP AND BEAR ARMS – FACIAL CHALLENGE)**

178.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

37

179.    Individual Plaintiffs and the members of the Organizational Plaintiffs have protected liberty interests, secured by the Fourteenth Amendment, in acquiring firearms so that they may exercise their Second Amendment rights to acquire, keep, and bear arms.

180.    Michigan's LTP regime conditions the exercise of Second Amendment rights on procedures that violate the Fourteenth Amendment's procedural Due Process Clause.

181.    M.C.L. § 28.422 requires individuals to apply for and obtain a single-use license before purchasing, carrying, possessing, or transporting a pistol. M.C.L. § 28.422(1).

182.    M.C.L. § 28.422(3) authorizes denial of an LTP upon a determination of "probable cause to believe that the applicant would be a threat to the applicant or to other individuals, or would commit an offense with the firearm that would violate a law of this or another state or of the United States."

183.    The LTP regime uses the evidentiary standard of "probable cause" to deny a license required to exercise a fundamental constitutional right.

184.    The probable-cause standard in M.C.L. § 28.422(3) lacks narrow, objective, and definite criteria. It vests local licensing officials with broad discretion to decide who may acquire a protected arm.

185.    The phrases "would be a threat" and "would commit an offense with the firearm" are predictive, undefined, and standardless terms that fail to provide ordinary applicants fair notice or meaningful standards regarding what facts, conduct, history, associations, prior contacts, prior applications, or prior unreviewed licensing determinations may be used to deny an LTP.

186.    M.C.L. § 28.422 does not define the factual predicates necessary to support a denial, does not identify or limit what information licensing officials may consider, and does not

38

require that such information be verified, reliable, adjudicated, disclosed, or preserved before an applicant may be denied permission to acquire a protected arm.

187.    The absence of definite standards is especially constitutionally defective because the challenged scheme governs access to conduct protected by the Second Amendment.

188.    The LTP regime provides no constitutionally adequate appeal process, no neutral decisionmaker, no adequate notice of disqualifying conditions, no mandatory disclosure of the information relied upon, no meaningful opportunity to contest adverse information, and no procedure capable of reliably correcting erroneous denials.

189.    The LTP regime results in arbitrary and inconsistent issuance and denial of licenses by licensing officials.

190.    Because the statute combines undefined predictive standards with the absence of meaningful review, local licensing officials' adverse determinations are insulated from effective challenge, thereby denying applicants the exercise of a fundamental constitutional right under the discretionary licensing regime rejected in *Bruen*.

191.    The LTP regime also duplicates the process already in place for firearm sales under federal law utilizing the Federal Bureau of Investigation's National Instant Criminal Background Check System ("NICS"). Thus, the LTP regime constitutes an abusive, unnecessary, and unconstitutional burden on the exercise of Second Amendment rights.

192.    On its face, M.C.L. § 28.422 creates a substantial risk of erroneous deprivation of liberty interests protected by the Fourteenth Amendment because it conditions the acquisition of protected arms on procedures that lack fair notice and are vague, standardless, discretionary, and functionally unreviewable.

39

193.    This fragmented statutory structure compounds the due process problem because ordinary applicants must navigate overlapping acquisition, carry, possession, transport, reporting, database, and enforcement provisions without clear notice of which obligations apply and when.

194.    The Organizational Plaintiffs bring this facial challenge to M.C.L. § 28.422 on behalf of their members who are subject to the challenged licensing regime and whose protected liberty interests are burdened by that regime.

195.    Accordingly, M.C.L. § 28.422 is facially unconstitutional because it violates the procedural due process guarantees of the Fourteenth Amendment.

196.    To prevent future violations of the Fourteenth Amendment's Due Process Clause, Plaintiffs are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202, including a declaration that M.C.L. § 28.422 is facially unconstitutional, void, and unenforceable.

**SIXTH CLAIM**
**PROCEDURAL DUE PROCESS VIOLATIONS INFRINGING**
**SECOND AMENDMENT RIGHTS**
**U.S. CONST. AMEND. XIV**
**(M.C.L. § 28.422 VIOLATES PROCEDURAL DUE PROCESS RIGHTS —**
**LIBERTY INTEREST: RIGHT TO ACQUIRE IN ORDER**
**TO KEEP AND BEAR ARMS – AS-APPLIED CHALLENGE)**

197.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

198.    Individual Plaintiffs and the members of the Organizational Plaintiffs have protected liberty interests, secured by the Fourteenth Amendment, in acquiring firearms so that they may exercise their Second Amendment rights to acquire, keep, and bear arms.

40

199. As applied to Plaintiffs, Michigan's LTP regime has resulted in erroneous deprivations of Second Amendment rights and continues to create a substantial risk of erroneous deprivation of liberty interests protected by the Fourteenth Amendment. See *Mathews v. Eldridge*, 424 U.S. 319 (1976).

200. As applied to Plaintiffs, M.C.L. § 28.422 failed to provide fair notice of what facts, conduct, history, alleged associations, prior contacts, prior applications, or prior unreviewed determinations could be used to deny or obstruct access to an LTP.

201. As applied to Plaintiffs, M.C.L. § 28.422 and Defendants' implementing policies, customs, and practices permitted licensing officials to rely on vague, undisclosed, unverified, unreliable, or unreviewed information without providing Plaintiffs adequate notice, disclosure, an opportunity to be heard, or meaningful review.

202. As applied to Plaintiffs, M.C.L. § 28.422 permitted licensing officials to deny, delay, deter, or obstruct the acquisition of protected arms through undefined predictive judgments rather than narrow, objective, and definite standards.

203. M.C.L. § 28.422 is unconstitutional as applied to Plaintiff Moser because it was used to deny him his right to acquire a firearm based on purported prior "contacts," unsubstantiated suspicion, and subsequent unquestioned reliance by another local agency on the prior denial rather than on any independent and objective determination of present eligibility.

204. As applied to Plaintiff Moser, M.C.L. § 28.422 permitted denial based on vague and undisclosed allegations rather than definite standards, reliable evidence, meaningful notice, or an opportunity for review.

41

205.    M.C.L. § 28.422 is unconstitutional as applied to Plaintiff Overly because it was used to deny or withhold an LTP, even after federal authorities confirmed that he had no prohibiting record and issued him a UPIN.

206.    As applied to Plaintiff Overly, M.C.L. § 28.422 and related practices failed to provide a meaningful mechanism to correct or overcome an erroneous or unsupported local licensing determination even after the relevant federal process confirmed that no prohibiting record existed.

207.    M.C.L. § 28.422 is unconstitutional as applied to Plaintiff Raney because it was used to prevent him from even submitting an application for an LTP, thereby barring access to the licensing process itself and foreclosing any opportunity to create a record, obtain a written determination, or seek review, notwithstanding his status as a Michigan resident seeking to acquire a firearm for lawful purposes.

208.    As applied to Plaintiff Raney, M.C.L. § 28.422 and related practices denied access to the process itself and thereby deprived him of any meaningful procedural safeguard before the burden on his Second Amendment rights attached.

209.    M.C.L. § 28.422 is unconstitutional as applied to Plaintiff Janson because it was used to deny and impede her right to acquire a firearm for lawful purposes based on an undefined and discretionary "probable cause" determination tied to the Department's belief that she had applied in other jurisdictions. Although Janson later lawfully acquired a pistol, the statute as applied to her imposed a concrete infringement and delay on the exercise of her right to acquire a protected arm.

210.    As applied to Plaintiff Janson, M.C.L. § 28.422 permitted denial based on vague, undefined, and discretionary assumptions about prior applications in other jurisdictions, without definite standards, fair notice, disclosure, or meaningful review.

211.    As applied to the Individual Plaintiffs, the LTP regime deprived, delayed, deterred, or chilled the exercise of protected liberty interests without constitutionally adequate notice, standards, disclosure, review procedures, or safeguards against erroneous deprivation.

212.    The Organizational Plaintiffs bring this as-applied challenge to M.C.L. § 28.422 on behalf of their members who have been, are being, or will be subjected to the challenged licensing regime and its vague, standardless, discretionary, and inadequate procedures.

213.    Accordingly, M.C.L. § 28.422 is unconstitutional as applied to Plaintiffs because it violates the procedural due process guarantees of the Fourteenth Amendment.

214.    To prevent future violations of the Fourteenth Amendment's Due Process Clause, Plaintiffs are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202, including a declaration that M.C.L. § 28.422 is unconstitutional, void, and unenforceable as applied to Plaintiffs.

**SEVENTH CLAIM**
**PROCEDURAL DUE PROCESS VIOLATIONS INFRINGING**
**SECOND AMENDMENT PROPERTY RIGHTS**
**U.S. CONST. AMEND. XIV**
**(M.C.L. § 28.422 VIOLATES PROCEDURAL DUE PROCESS RIGHTS — PROPERTY INTEREST: RIGHT TO KEEP AND BEAR ARMS — FACIAL CHALLENGE)**

215.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

216.    Individual Plaintiffs and the members of the Organizational Plaintiffs have protected property interests in the firearms they have acquired, seek to acquire, and seek to possess.

217.    Michigan law requires that, following the transfer of a pistol, the seller submit transaction documentation to the appropriate governmental authority for entry into the State's pistol-record database. *See* M.C.L. § 28.422(5).

218.    This statutory reporting obligation is imposed on the seller, not the purchaser.

219.    Michigan's statutory scheme exposes both purchasers and possessors to enforcement consequences if reporting is not completed, timely received, accurately entered, or properly carried through the State's firearm-recording system.

220.    Those enforcement consequences include investigation, seizure, forfeiture, destruction, disposal, prosecution, or unlawful-possession treatment under the challenged statutory scheme.

221.    On its face, the statutory scheme provides no clear, readily accessible, or constitutionally adequate mechanism for purchasers to compel seller compliance, confirm timely and accurate submission, cure seller noncompliance, or obtain meaningful pre-deprivation review before enforcement consequences may attach.

222.    By making lawful acquisition and continued possession of a pistol dependent on a third party's reporting acts or omissions, the statutory scheme creates a substantial risk that purchasers will be deprived of protected property interests based on conduct they do not control.

223.    The statutory scheme, therefore, exposes lawful purchasers and possessors to deprivation of protected property interests without constitutionally adequate individualized notice, an opportunity to be heard, or a meaningful mechanism to contest, cure, or obtain pre-deprivation

44

review of whether the firearm was actually possessed contrary to law or whether any reporting defect was caused by a third party.

224.    M.C.L. § 28.434 also grants the Department of State Police immunity from civil liability for disposing of a firearm in compliance with the section, thereby aggravating the due process defect by insulating disposal after an inadequate statutory process has resulted in the loss or destruction of protected property.

225.    Plaintiffs credibly fear enforcement of these provisions, which chills their acquisition and possession of pistols.

226.    The Organizational Plaintiffs bring this facial challenge on behalf of their members who are subject to the challenged reporting, seizure, forfeiture, destruction, disposal, and enforcement structure.

227.    Accordingly, M.C.L. § 28.422(5), together with M.C.L. § 28.434's enforcement and forfeiture consequences, is facially unconstitutional because the statutory scheme violates the procedural due process guarantees of the Fourteenth Amendment.

228.    Plaintiffs are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202. This Court should declare M.C.L. § 28.422(5), together with M.C.L. § 28.434's enforcement and forfeiture consequences, facially unconstitutional and enjoin enforcement of the challenged statutory scheme.

**EIGHTH CLAIM**
**PROCEDURAL DUE PROCESS VIOLATIONS INFRINGING**
**SECOND AMENDMENT PROPERTY RIGHTS**
**U.S. CONST. AMEND. XIV**
**(M.C.L. §§ 28.422 AND 28.434 VIOLATES PROCEDURAL DUE PROCESS RIGHTS —**
**PROPERTY INTEREST: RIGHT TO KEEP AND BEAR ARMS — AS-APPLIED**
**CHALLENGE)**

45

229. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

230. Plaintiff Janson and similarly situated members of the Organizational Plaintiffs have protected property interests in the firearms they have acquired, seek to acquire, and seek to possess.

231. As applied, Plaintiff Janson is directly subjected to the challenged reporting and enforcement structure because she lawfully acquired a pistol through a transaction dependent on third-party reporting for entry into the State's pistol-record system.

232. Janson had no statutory duty or practical ability to control whether the seller completed the reporting correctly, whether the submission was timely received, or whether the information was accurately entered into the State's database before potential enforcement consequences could arise.

233. The statutory scheme provides no clear, readily accessible, or constitutionally adequate mechanism for Janson to compel seller compliance, confirm timely and accurate submission, cure seller noncompliance, or obtain meaningful pre-deprivation review before enforcement consequences may attach.

234. As applied to Janson, the challenged statutory scheme burdens her continued possession of a lawfully acquired pistol by making her property interest depend on reporting acts or omissions of a third party and on a government-recording process she cannot control.

235. That present and ongoing exposure chills Janson's acquisition and possession of protected arms and creates a concrete pre-enforcement injury sufficient for Article III standing.

236.    As applied to Janson, and to similarly situated members of the Organizational Plaintiffs, the same facial defects alleged in Count Seven operate concretely: lawful purchasers and possessors are exposed to threatened enforcement consequences affecting their liberty and property interests based on third-party reporting acts or omissions, without a clear, direct, and meaningful procedure to compel compliance, cure noncompliance, or obtain pre-deprivation review.

237.    As applied to Janson, and to similarly situated members of the Organizational Plaintiffs, the statutory scheme creates a substantial risk of erroneous deprivation because it makes lawful acquisition and continued possession of a pistol dependent on third-party compliance with reporting obligations that the purchaser cannot control.

238.    Plaintiff Janson and similarly situated members of the Organizational Plaintiffs credibly fear enforcement of these provisions, particularly in private transactions where sellers may fail to submit, timely submit, or accurately submit the required documentation.

239.    The Organizational Plaintiffs bring this as-applied challenge on behalf of their members who have acquired, seek to acquire, or possess pistols subject to the challenged reporting and enforcement structure.

240.    Accordingly, M.C.L. § 28.422(5), together with the enforcement mechanism and forfeiture consequences under M.C.L. § 28.434, M.C.L. § 28.422(5) is unconstitutional as applied to Plaintiff Janson and similarly situated members of the Organizational Plaintiffs because the statutory scheme violates the procedural due process guarantees of the Fourteenth Amendment.

241.    Plaintiffs are entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202.

242.    This Court should declare M.C.L. § 28.422(5), together with M.C.L. § 28.434's enforcement and forfeiture consequences, unconstitutional as applied to Plaintiff Janson and similarly situated members of the Organizational Plaintiffs and enjoin enforcement of the challenged statutory scheme against them.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

a.  Declare that Michigan's firearm licensing, reporting, and forfeiture statutes, including M.C.L. §§ 28.422 and 28.434, violate the Second and Fourteenth Amendments to the United States Constitution;

b.  Declare that those provisions are unconstitutional both facially and as applied to Plaintiffs;

c.  Permanently enjoin Defendants, their respective municipalities, officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the order, from enforcing M.C.L. §§ 28.422 and 28.434, and any related laws, regulations, policies, practices, or customs that infringe upon Plaintiffs' constitutional rights;

d.  Enjoin Defendants from any further collection, receipt, entry, maintenance, use, dissemination, or transfer of firearm ownership data obtained pursuant to the challenged statutes;

e.  Enjoin Defendants from using, querying, disclosing, sharing, disseminating, or relying upon any previously collected firearm ownership data for investigative, regulatory, licensing, prosecutorial, civil, or administrative purposes;

48

f.  Order Defendants to expunge, delete, or destroy all firearm ownership records obtained pursuant to M.C.L. §§ 28.422 that pertain to the Individual Plaintiffs and to those members of the Organizational Plaintiffs;

g.  In the alternative, if the Court declines to order immediate destruction of broader categories of records, order that such data be sealed from operational use, segregated, and preserved only as necessary for appellate review, compliance review, or further order of the Court, and not otherwise accessed or disseminated;

h.  Award Plaintiffs their reasonable attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

i.  Award pre-judgment and post-judgment interest as permitted by law; and

j.  Grant such other and further relief as this Court deems just and proper.

Dated: June 14, 2026                    Respectfully submitted,


/s/ Thomas J. Lambert
THOMAS J. LAMBERT (P86348)
OUTSIDE LEGAL COUNSEL, PLC
Attorney for Moser, Janson, and Michigan Open Carry
PO Box 144
Jamestown, MI 49427
(616) 275-2976
tlambert@olcplc.com


/s/ Dean G. Greenblatt
DEAN G. GREENBLATT (P54139)
DEAN G. GREENBLATT, PLC
Attorney for Moser, Janson, and Michigan Open Carry
4190 Telegraph Road, Suite 3500
Bloomfield Hills, MI  48302
(248) 644-7520
dgg@mnsi.net

/s/ Steven W. Dulan
STEVEN W. DULAN (P54914)
LAW OFFICES OF STEVEN W. DULAN, PLC
Attorney for Overly, Raney, and Michigan Coalition for Responsible Gun Owners
5311 Park Lake Road
East Lansing, MI 48823
(517) 332-3149
swdulan@stevenwdulan.com

/s/ James J. Makowski
JAMES J. MAKOWSKI (P62115)
MAKOWSKI LEGAL GROUP, PLC
Attorney for Michigan Gun Owners
18306 Middlebelt Rd.
Livonia, MI  48152
(313) 434-3900
jmakowski@makowskilegal.com

/s/ Terry L. Johnson
TERRY L. JOHNSON (P70773)
LAW OFFICE OF TERRY L. JOHNSON, PLLC
Attorney for Michigan Gun Owners
2915 Biddle Ave Ste 200,
Wyandotte, MI 48192
(313) 421-6193
terryljohnson00@gmail.com

/s/ Joseph G.S. Greenlee
JOSEPH G.S. GREENLEE
NATIONAL RIFLE ASSOCIATION -
INSTITUTE FOR LEGISLATIVE ACTION
Attorney for National Rifle Association of
America
11250 Waples Mill Road
Fairfax, VA 22030
(703) 267-1161
jgreenlee@nrahq.org

# Index of Exhibits to Complaint

| Exhibit | Description |
|---|---|
| **Exhibit A** | Relevant Statutory Provisions |
| **Exhibit B** | Affidavit of Dean Moser |
| **Exhibit C** | Affidavit of Thomas Overly |
| **Exhibit D** | Affidavit of David Raney |
| **Exhibit E** | Affidavit of Reagan Janson |
| **Exhibit F** | Affidavit of Brady Schickinger on behalf of Michigan Coalition for Responsible Gun Owners |
| **Exhibit G** | Affidavit of Jerry Atkins on behalf of Michigan Gun Owners |
| **Exhibit H** | Affidavit of Jason Gillman on behalf of Michigan Open Carry |
| **Exhibit I** | Affidavit of John Commerford on behalf of National Rifle Association of America |
| **Exhibit J** | ATF Brady Permit Chart |
| **Exhibit K** | FBI Active Entries in the NICS Indices |
| **Exhibit L** | Michigan State Police Firearm Records / Pistol Entry Database Instructions |